**VEST, Plaintiff-Appellant, v. KRAMER, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 22194, 22196. Decided July 2, 1951.

316

Beach & Warner, Cleveland, for plaintiffs-appellants.
Hauxhurst, Inglis, Sharp & Cull, Cleveland, for defendants-appellees.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered for defendant in the common pleas court of Cuyahoga County. The plaintiff, a minor of twelve years of age, brings this action by his father and next friend against the defendant, seeking damages for personal injuries suffered in an accident which occurred March 16, 1948.

There was also joined in this appeal the loss of services case of the father of David Vest. The court having entered a judgment against the plaintiff in that case, for the same reasons, and the errors upon appeal being the same, the results herein reached will apply to both cases, although the opinion is written as though it applies only to the case of David Vest, a minor.

The plaintiff, David Vest, a minor, was a member of Boy Scout Troop No. 214 in Berea. The defendant was assistant Scout Master of the troop. The troop was engaged in collecting waste paper to raise money for troop activities. The boys had collected and taken paper procured from homes, to the curb lawn. The defendant procured a two-wheel trailer, the bed of which was eight feet long and about four feet wide with side-boards about ten to twelve inches high. He attached the said trailer to the rear bumper of his automobile and with the help of the boys from the troop, including the plaintiff, loaded the paper into the trailer to take it to the Fair Grounds from which point it was to be sold. The paper was loaded on to the trailer until it was "filled and overheaped." Several of the boys, including the plaintiff, with the knowledge and approval of the defendant, climbed on

top of the over-heaped papers for the purpose of riding to the Fair Grounds to unload them and also to hold the papers down enroute so that they would not slip or fall off.

The plaintiff's opening statement was then, in part, as follows:

"* * * and after moving a short distance the overheaped papers became insecure and some fell off and defendant was advised thereof, and slowed down the speed of his automobile, and while this plaintiff, after replacing the dislodged papers was climbing aboard said moving trailer, defendant suddenly and without warning caused his auto and said trailer to move forward with increased speed and this plaintiff lost his grip and balance, whereupon his right foot became caught in one of the wheels of the trailer and in turn he was thrown under the wheels of said trailer and his left leg was twisted over his shoulder and broken and his right foot was badly bruised, wrenched and twisted, while defendant continued forward with said automobile and trailer. And we claim that, and expect to prove, that it caused David Vest, this minor plaintiff, severe and lasting injuries to his person."

Upon the conclusion of plaintiff's opening statement, which incorporated the allegations of his petition, the defendant moved for a directed verdict on the ground that the plaintiff at the time he was injured was a "guest" of the defendant in riding on the trailer attached to his (the defendant's) automobile, and there being no claim that the plaintiff was injured by the wilful or wanton misconduct of the defendant, under the provisions of §6308-6 GC, a cause of action was not stated. The court granted said motion, dismissed the plaintiff's petition and entered judgment for the defendant.

The plaintiff assigns the following errors:

"1. The trial court erred in granting the motion of defendant appellee for judgment in his favor upon the pleadings.

"2. The trial court erred in granting defendant's motion for judgment in his favor upon the opening statement of counsel.

"3. The trial court erred in granting defendant's motion for judgment in his favor upon the pleadings and upon the opening statement of counsel.

"4. That the trial court erred in dismissing plaintiff-appellant's petition and rendering judgment for defendant."

The "guest" statute provides as follows:

"Sec. 6308-6 GC. Liability of owners and operators of motor vehicles to guests. The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in

or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

In considering the plaintiff's claims of error, two questions are presented.

1. Is the type of trailer admittedly used by the defendant to haul scrap paper and which was not designed to carry passengers, said to be a 'motor vehicle' within the meaning of that term as used in the 'guest' statute?

2. Was the plaintiff a 'guest' as the term is used in §6308-6 GC, while engaged with the defendant in the task of collecting scrap paper for Scout Troop No. 214, in which the plaintiff was a member and defendant an assistant Scout Master, the project being one in the interest of the troop? To create the relationship of host and guest to come within the meaning of the guest statute, the privilege of riding afforded the guest must be entirely gratuitous. No benefit, as compensation, for the ride, can flow to the host other than the pleasure of the guest's company during the trip.

In the case of **Hasbrook v. Wingate, 152 Oh St 50,** at **pages 56** and **57** the Court says:

"The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a guest; but, if his carriage tends to promote the mutual interest of both himself and the driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or where the rider accompanies the driver at the instance of the latter for the purpose of having the rider render a benefit or services to the driver on a trip which is primarily for the attainment of some objective of the driver, the rider is a passenger and not a guest. 60 Corpus Juris Secundum, 1012, 1913, Sec. 399 (5); Scholz v. Leuer, 7 Wash. (2d) 76, 109 P. (2d) 294; Peery v. Mershon, 149 Fla. 351, 5 So. (2d) 694. See: Chaplower v. Powsner, 119 Conn. 188, 175 A. 470, 95 A. L. R. 1177; Eubanks v. Kielsmeier, 171 Wash. 484, 18 P. (2d) 48; Clendenning Admr. v. Simerman, 220 Iowa 739, 263 N. W. 248; Liberty Mutual Ins. Co. v. Stitzle, 220 Ind. 180, 41 N. E. (2d) 133."

The facts stated by the plaintiff in his opening statement were to the effect that the defendant was directing the plaintiff and other boys in a Boy Scout activity. The plaintiff was under the supervision and care of the defendant. The defendant, in effect, stood "in loco parentis" with the plaintiff

in providing for his safety, while engaged in Scout activities under his direction. As Scout Master, in directing the activities of the members of his troop, wherein the use of his motor vehicle became essential in carrying on such activities, he has the duty to exercise ordinary care in providing for the safety of the Scouts who become his passengers. The guest statute does not apply under such circumstances. The parties under these facts are each acting for their joint benefit in a common enterprise.

In the case of Woodman et al v. Hemet Union School District, etc. 136 Cal. App. 544, 29 P (2d) 257, the court had for consideration almost this precise question and held that a boy who had applied for membership in a Scout Troop, paid dues and was attending meetings and functions, was not a "guest" in a truck operated by another Boy Scout on a trip to procure rock and sand for fireplace at Scout Barracks, within rule requiring proof of gross negligence or wilful misconduct as a basis of recovery of damages for injuries sustained as the result of permitting the use of the truck in a dangerous state of repair. We conclude therefore that the plaintiff was not a guest under the provisions of §6308-6 GC.

Coming now to the question as to whether the trailer is to be classed as a motor vehicle under the provisions of the guest statute, §6308-6 supra, GC, the description of the "utility trailer" in the pleadings and the opening statement shows conclusively that it was designed for the carrying of property and not for passengers or guests. The box was about 8' x 4' by 8 or 10" deep with no provision for passengers. The term "motor vehicle" and the term "trailer" and "semi-trailer" is defined at the beginning of the chapter on motor vehicles in paragraphs 2, 7 and 8 of §6290 GC, as follows:

"2. 'Motor vehicle' means any vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires, except road rollers, traction engines, power shovels, power cranes and other equipment, used in construction work and not designed for or employed in general highway transportation, well drilling machinery, ditch digging machinery, farm machinery, threshing machinery, hay bailing machinery and agricultural tractors and machinery used in the production of horticultural, agricultural and vegetable products.
"* * *

"7. 'Trailer' means any vehicle without motive power designed or used for carrying property or persons wholly on its own structure and for being drawn by a motor vehicle, and means and includes any such vehicle when formed by or

operated as a combination of a 'semi-trailer' and a vehicle of the dolly type such as that commonly known as a 'trailer-dolly.'

"8. 'Semi-trailer' means any vehicle of the trailer type without motive power so designed or used with another and separate motor vehicle that in operation a part of its own weight or that of its load, or both, rests upon and is carried by such other vehicle furnishing the motive power for propelling itself, and the vehicle herein referred to, and shall include, for the purpose only of registration and taxation under the provisions of this chapter, any vehicle of the dolly type, such as a 'trailer-dolly' designed or used for the conversion of a 'semi-trailer' into a 'trailer.' "

These sections make a clear distinction between a trailer or semi-trailer designed for use for carrying property and one designed for carrying persons. This distinction is also made in the definition sections of the Traffic Code (§6307-2 GC). If these sections are to be considered in any way applying to the guest statute it is clear that a trailer designed exclusively for use in carrying property and not persons cannot be a motor vehicle within the meaning of the guest section.

. If the theory of the guest statute is to visit upon a guest who is riding upon or in a motor vehicle of another without being obliged to pay therefor, the obligation of assuming the ordinary perils of traffic and thus relieving the motorist on the grounds of common justice from injuries sustained by such guest because of the driver's negligence, a motor vehicle owner or operator who attaches a utility trailer designed exclusively for carrying property should not expect the protection of the guest statute nor should such statute be so interpreted as to relieve him from his own negligence in knowingly permitting a boy twelve years of age to ride on such a trailer, particularly when it is overloaded and there is no place of reasonable safety for such rider.

We conclude, therefore, that the court committed reversible error in directing a verdict for the defendant.

The judgment is reversed and cause remanded for further proceedings according to law. Exc. Order see journal.

HURD, J, THOMPSON, J, concur.