# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0017

Jeffrey M. Davies,
Respondent,

vs.

Waterstone Capital Management, L. P.,
Appellant.

**Filed December 1, 2014**
**Reversed and remanded**
**Hudson, Judge**

Hennepin County District Court
File Nos. 27-CV-11-16371, 27-CV-13-11253

Liz Kramer, Sharon R. Markowitz, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent)

Sam L. Hanson, Diane B. Bratvold, Briggs and Morgan, P.A., Minneapolis, Minnesota; and

Richard A. Ross, Pamela Abbate-Dattilo, Fredrickson & Byron, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stoneburner, Judge.[*]

## S Y L L A B U S

A party's assertion that a contractually shortened limitations period in an arbitration agreement is unreasonable, and thus unenforceable, is a challenge to the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

validity of the arbitration agreement, which presents an issue of arbitrability for the court to decide.

## **O P I N I O N**

**HUDSON**, Judge

Appellant Waterstone Capital Management, L.P. challenges a district court order confirming an arbitration award in favor of respondent Jeffrey M. Davies. Appellant asserts that the district court erred by, inter alia, concluding that a 90-day limitations period in the parties' arbitration agreement is unreasonable and unenforceable. Because we conclude that the 90-day limitations period is enforceable and compels vacation of the arbitration award, we reverse and remand.

## **FACTS**

In January 2007, Waterstone, a hedge fund, made a written employment offer to Davies. The offer, for the position of senior analyst, was contingent on Davies executing a confidentiality, non-compete, and non-solicitation agreement (the employment agreement), which Davies signed on January 22, 2007. The employment agreement includes an arbitration provision, mandating arbitration of "any controversy or claim" relating to the agreement and requiring that "[a]ny request for arbitration must be filed with the American Arbitration Association within ninety (90) days of the events giving rise to the claim." On July 15, 2011, Waterstone terminated Davies's employment, purportedly "for cause."

*Initial district court proceedings*

On August 11, 2011, 27 days after Waterstone terminated his employment, Davies initiated civil litigation against Waterstone, alleging breach of contract, defamation, and related claims. In his complaint, Davies asserted that the arbitration provision in the employment agreement was in conflict with a choice-of-law-and-forum provision of the agreement and that the agreement must be construed against Waterstone as the drafter. Waterstone answered the complaint, asserting as its first defense that the district court lacked subject-matter jurisdiction because the claims were subject to the exclusive remedy of arbitration.

On January 16, 2012, 185 days after terminating Davies's employment, Waterstone moved to dismiss or for judgment on the pleadings, asserting alternatively that, because of the arbitration provision, the complaint failed to state a claim upon which relief could be granted; that the district court lacked subject-matter jurisdiction; and that three of the claims failed on the pleadings. Waterstone expressly argued to the district court that the timeliness of a demand for arbitration is an issue for the court to decide. Because the 90-day period to initiate arbitration proceedings had passed, Waterstone asserted that the litigation must be dismissed rather than ordered to arbitration.

In his memorandum in opposition to Waterstone's motion to dismiss, Davies argued alternatively that there was no agreement to arbitrate; that Waterstone waived the right to arbitrate by participating in district court proceedings; and that the 90-day limitations period is unreasonable and thus unenforceable. Davies made the timeliness

argument assuming arguendo that the arbitration provision is enforceable, but he did not argue that the timeliness issue should be decided by an arbitrator.

On April 3, 2012, the district court issued an order dismissing the complaint and ordering the matter to arbitration. The district court reasoned that there is no conflict in the employment agreement and that, based on its plain language, "the arbitration clause governs *what* disputes will be resolved in arbitration, while the forum selection clause designates *where* other claims not subject to arbitration will be heard." The district court also determined that Waterstone did not waive the right to arbitrate by participating in the litigation. And the district court determined that the 90-day limitations period in the arbitration agreement is unreasonable. Accordingly, the district court ordered the matter to arbitration within 90 days of its order, less the 27 days that had elapsed between Davies's termination and his initiation of the civil action (effectively tolling the 90-day limitations period during the pendency of the civil action).

Waterstone appealed. This court questioned jurisdiction and dismissed the appeal, reasoning that an order compelling arbitration is not an appealable order under Minn. Stat. § 572B.28(a) (2012) and that Waterstone could challenge the district court's order in an appeal from an order confirming a subsequent arbitration award. *Davies v. Waterstone Capital Mgmt., L.P.*, No. A12-0679 (Minn. App. May 15, 2012) (order).

### The arbitration proceedings

Davies submitted an arbitration demand on April 13, 2012, 273 days after Waterstone terminated his employment. Waterstone moved to dismiss the claims, arguing that the arbitration demand was untimely and asserting that the district court had

4

exceeded its authority by "rewriting" the arbitration provision and thereby "encroached upon the Arbitrator's authority to interpret a contract subject to arbitration." Davies opposed the motion to dismiss, asserting that "the validity and enforceability of arbitration provisions are undoubtedly a question for the Court—not arbitrators."

The arbitrator denied Waterstone's motion to dismiss. In an attached memorandum, the arbitrator explained that he was not reaching "the issue of whether I lack the power to disagree with the District Court and Court of Appeals, because I do not disagree with them."

Following an arbitration hearing held over five days, the arbitrator issued a $9,000,000 interim award in favor of Davies and a final award allowing $1,000,000 in attorney fees and $34,091.57 in costs and disbursements in addition to the $9,000,000 damages award.

### District court proceedings following the arbitration

Davies moved to confirm the arbitration award, and Waterstone moved to vacate or modify it. In support of its motion to vacate or modify, Waterstone renewed its argument that Davies's claims were untimely because of the 90-day limitations period in the arbitration provision.[1]

The district court granted Davies's motion and denied Waterstone's. The district court reasoned that the arbitrator had authority to determine the timeliness issue and that

---

[1] Waterstone also asserted that the arbitrator exceeded his authority and manifestly disregarded the law in ruling on the merits of Davies's claims. Because our holding on the timeliness issue is dispositive, we do not set forth or address Waterstone's other arguments for vacatur.

5

the arbitrator's decision in that regard was entitled to deference. The district court alternatively concluded that the timeliness decision was correct on the merits. The district court rejected Waterstone's other arguments for vacatur and ordered that judgment be entered in favor of Davies. Waterstone appeals.

## ISSUE

Did the district court err by denying Waterstone's motion to vacate the arbitration award?

## ANALYSIS

## I.

We first address the parties' disagreement over which law applies: the Federal Arbitration Act (FAA), the Minnesota Uniform Arbitration Act (MUAA), and/or the Minnesota Revised Uniform Arbitration Act (MRUAA).

The FAA, 9 U.S.C. §§ 1-16 (2012), generally is applied to actions asserted in United States courts. *See, e.g.,* 9 U.S.C. § 10 (enumerating circumstances under which United States court may vacate arbitration award). Section 2 of the act, however, expresses a broad federal policy favoring arbitration, and the FAA preempts state law that "require[s] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989) (quotation omitted). Notwithstanding this preemption, generally applicable state-law "contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S. Ct. 1652, 1656 (1996). And with

6

respect to procedural issues, the United States Supreme Court has held that the FAA will pre-empt state law only "to the extent that [state law] actually conflicts with federal law—that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Volt*, 489 U.S. at 477, 109 S. Ct. at 1255 (quotation omitted). Thus, Minnesota courts may apply state law to motions to confirm or vacate arbitration awards unless provisions of state law are preempted by section 2 of the FAA.

For more than fifty years, the enforcement of arbitration awards in Minnesota was governed by the MUAA, Minn. Stat. §§ 572.08-.30 (2010). *See* 1957 Minn. Laws, ch. 633, at 849–856 (adopting MUAA). In 2010, the legislature repealed the MUAA, and passed the MRUAA, Minn. Stat. §§ 572B.01-.31 (2012). 2010 Minn. Laws. ch. 264, art. 1, §§ 1-33, at 449–511. The MRUAA generally became effective August 1, 2011, but it includes a savings clause that precludes its application to "an action or proceedings commenced or right accrued before [the MRUAA took] effect." Minn. Stat. § 572B.30.

Because Davies was discharged from employment on July 15, 2011, we conclude that the MUAA governs his claims. *See, e.g., State ex rel. Kane v. Stassen*, 208 Minn. 523, 527, 294 N.W. 647, 649 (1940) (reasoning that relator had accrued right to contest his discharge on date of discharge); *Black's Law Dictionary* 1436 (9th ed. 2009) (defining "accrued right" as "[a] matured right; a right that is ripe for enforcement (as through litigation)"). Accordingly, in deciding this appeal, we apply the MUAA.

7

## II.

Under the MUAA, a district court, upon application, must "confirm an award, unless . . . grounds are urged for vacating or modifying or correcting the award." Minn. Stat. § 572.18. "[T]he court shall vacate an award when the award is procured by corruption, fraud, or other undue means; there was prejudicial misconduct or corruption by the arbitrator or evident partiality of the neutral; substantial prejudice occurred through improper conduct of the hearing; or there was no arbitration agreement." *Hunter, Keith Indus. v. Piper Capital Mgmt., Inc.*, 575 N.W.2d 850, 854 (Minn. App. 1998) (citing Minn. Stat. § 572.19, subd. 1).

"A judicial appeal from an arbitration decision is subject to an extremely narrow standard of review." *Id.* The courts must "exercise every reasonable presumption in favor of the award's finality and validity." *Id.* (quotation omitted). "In reviewing an arbitrator's decision, the arbitrator is the final judge of both law and fact, but this court's review of the determination of arbitrability is de novo." *Indep. Sch. Dist. No. 88 v. Sch. Serv. Emps. Union Local 284*, 503 N.W.2d 104, 106 (Minn. 1993).

Waterstone asserts that the district court was required to vacate the arbitration award because Davies's arbitration demand was not submitted within the 90-day limitations period of the arbitration provision. As a threshold matter here, the parties dispute which timeliness decision should be reviewed—the district court's or the arbitrator's—and thus what standard of review should apply. Waterstone asserts that arbitrability is an issue for the courts to decide and that this court should review the district court's timeliness decision de novo. Davies asserts that timeliness is a condition

8

precedent to arbitration that, as a procedural matter, is within the authority of the arbitrator to decide, and thus that the arbitrator's timeliness decision must be reviewed under the deferential standard applied to arbitration awards.[2]

### A. The enforceability of the 90-day limitations period is an issue for the courts to decide.

Unless an arbitration agreement provides otherwise, courts presume that parties intend for courts to primarily decide substantive matters of arbitrability but for arbitrators to primarily decide "disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206–07 (2014). The parties focus on whether the timeliness of an arbitration demand is for the court or the arbitrator to decide, an issue on which there appears to be some inconsistency in the Minnesota caselaw. *Compare Minn. Fed'n of Teachers, Local 331 v. Indep. Sch. Dist. No. 361*, 310 N.W.2d 482, 484 (Minn. 1981), *with 200 Levee Drive Assocs. v. Bor-Son Bldg. Corp.*, 441 N.W.2d 560, 563–64 (Minn. App. 1989). We conclude, however, that the parties' focus is misplaced. There is no dispute over the meaning of the 90-day limitations period in the arbitration provision, and

---

[2] Each of the parties also devotes significant efforts to demonstrating that the opponent has taken inconsistent positions or agreed to have the timeliness issue decided by a particular decisionmaker. Our own review of the record confirms that Davies did not object to the district court's authority to decide the timeliness issue in opposing Waterstone's motion to dismiss, although he now argues that the decision was for the arbitrator and that Waterstone took a position during the arbitration that was inconsistent with its assertions to the district court. But we are not persuaded that either party is estopped from challenging a particular decision. *See State v. Pendleton*, 706 N.W.2d 500, 507 (Minn. 2005) (declining to adopt judicial-estoppel doctrine and noting that, even if adopted, it would only apply when a party has prevailed on a previous, inconsistent position). Nor can we discern from the record any contemporaneous agreement to have the matter decided by the district court or the arbitrator.

Davies does not dispute that he failed to comply with that limitations period. Rather, Davies argues that the limitations period is unreasonable and should not be enforced. This is a challenge to the validity of the arbitration agreement, which is an issue for the court to decide. *See, e.g., Faber v. Menard, Inc.*, 367 F.3d 1048, 1052-54 (8th Cir. 2004) (reviewing as issue of contract validity argument that fee-splitting requirement in arbitration provision was unconscionable); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (holding that issue of whether arbitration agreement including 30-day limitations period was unconscionable was for court to decide); *cf.* Minn. Stat. 336.2-302(1) (2012) (assigning to court determination of whether contract for sale of goods is unconscionable).

**B.    *The district court erred by determining that the 90-day limitations period in the parties' arbitration agreement was unreasonable.***

We review de novo the district court's decision that the 90-day limitations period is unreasonable. *See Share Health Plan, Inc. v. Marcotte*, 495 N.W.2d 1, 3 (Minn. App. 1993) (holding that enforceability of contract is issue of law reviewed de novo), *review denied* (Minn. Mar. 30, 1993). The general rule is that "[p]arties may limit the time within which legal claims may be brought provided there is no statute specifically prohibiting the use of a different limitations period in such a case and the time fixed is not unreasonable." *Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 606 (Minn. 2002). In *Peggy Rose*, the Minnesota Supreme Court held that this rule applies to contractual limitations periods in arbitration agreements. *Id.* at 607.

10

There is little guidance in the Minnesota caselaw on how to determine whether a contractually shortened limitations period is reasonable. In *Peggy Rose*, the supreme court held unreasonable an 18-month limitations clause in an arbitration agreement. *Id.* at 609. The *Peggy Rose* court found "it useful as a starting point to consider what parameters the legislature has determined to be appropriate." *Id.* at 607. But *Peggy Rose* involved unusual circumstances because the respondent in that case asserted fraud claims, and the supreme court interpreted the limitations provision in the arbitration agreement to not include a discovery provision. *Id.* at 610. Primarily because the 18-month limitations period could expire before a claim even accrued, the supreme court held it unreasonable. The supreme court explained, "Although we maintain that parties may agree to a shorter limitations period than provided by statute, there is a difference between merely shortening the time within which an existing claim may be brought and altering the date on which a cause of action accrues." *Id.* at 608-09. The decision did not address whether an 18-month term would be reasonable if it included a discovery provision.

In *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, the supreme court explained that "[w]hether a contractual limitation is reasonable or not is to be decided on a case-by-case basis, looking at the particular facts of each case." 383 N.W.2d 645, 651 (Minn. 1986). The *Henning* court affirmed a district court determination that a one-year contractual limitations period was unreasonably short. But in *Gendreau v. State Farm Ins. Co.*, a case on which *Henning* relies, the supreme court

11

held that a one-year contractual limitations period was not unreasonable. 206 Minn. 237, 239, 288 N.W. 225, 226 (1939). [3]

Courts in other jurisdictions have held that "[a] contractually modified limitations period is unreasonable if the reduced limitations period 'effectively deprives a party of the reasonable opportunity to vindicate his or her rights.'" *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*, 300 P.3d 124, 129 (Nev. 2013) (quoting *Hatkoff v. Portland Adventist Med. Ctr.*, 287 P.3d 1113, 1121 (Or. Ct. App. 2012), and citing *William L. Lyon & Assoc. v. Super. Ct.*, 139 Cal. Rptr. 3d 670, 680 (Cal. Ct. App. 2012) ("'Reasonable' in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy." (Quotation omitted)). "[A] limitations provision that requires the plaintiff to bring an action before any loss can be ascertained is per se unreasonable." *Holcomb*, 300 P.3d at 129. Conversely, "[t]he period of limitation is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be

---

[3] In *Henning*, the supreme court treated the district court's determination that a one-year contractual limitations period was unreasonably short as a finding of fact. 383 N.W.2d at 651. But in both *Peggy Rose* and *Gendreau*, the supreme court addressed the issue without deference to the district court decisions. *See Peggy Rose*, 640 N.W.2d at 606-09; *Gendreau*, 206 Minn. at 239, 288 N.W. at 226. Because the parties do not dispute the underlying facts, we conclude that de novo review is appropriate. *See, e.g., Capehart v. Heady,* 23 Cal. Rptr. 851, 853 (Cal. Ct. App. 1962) (rejecting argument that question of reasonableness was fact issue for jury: "The question is one of law, namely, is the period of limitation, *in itself*, unreasonable."); 54 C.J.S. Limitations of Actions § 65 (2010) (describing reasonableness standard as deriving from public policy).

ascertained." *Timko v. Oakwood Custom Coating, Inc.*, 625 N.W.2d 101, 104 (Mich. Ct. App. 2001) (quotation omitted).

Under the totality of the circumstances in this case, we conclude that the 90-day limitations period in the parties' arbitration agreement is not unreasonable. Davies is a sophisticated party who actively negotiated the terms of his employment. And there is nothing in the record suggesting that the 90-day period precluded a "sufficient opportunity to investigate and file an action," that it was "so short as to work a practical abrogation of the right of action" or that an "action [was] barred before the loss or damage [could] be ascertained." *Id.* To the contrary, Davies was able to serve a detailed complaint on Waterstone less than 30 days after the termination of his employment. The record reflects that Davies made a strategic decision not to demand arbitration within the 90-day period, not that he was unfairly precluded from doing so.

We acknowledge that the statutory limitations periods governing the claims that Davies asserted are significantly longer than 90 days. *See, e.g.,* Minn. Stat. §§ 541.05, subd. 1(1) (2012) (six-year statute of limitations for breach-of-contract claims); 541.07(1) (2012) (two-year statute of limitations for defamation claims). But we also note Waterstone's assertion that it includes a 90-day arbitration provision in its employment agreements to ensure the quick and private resolution of employment disputes. *Cf. Allen v. Hennepin Cnty*, 680 N.W.2d 560, 564-65 (Minn. App. 2004) (recognizing interest of public employers in promptly resolving employment disputes in holding that 90-day limitation period applies to "hybrid" labor claims). The 90-day limitations period is clearly stated in Davies's employment agreement, and Davies acknowledged in the

agreement that he had had "a reasonable and adequate opportunity to consult with independent counsel regarding the effect of [the a]greement, the sufficiency of the independent consideration provided [Davies] hereunder, and the reasonableness of the restrictions set forth herein." Under these circumstances, we conclude that the 90-day limitations period in the parties' arbitration agreement is not unreasonable.

## D E C I S I O N

The district court erred by determining that the 90-day limitations period in the arbitration provision of the parties' employment agreement was unreasonable. Because Davies indisputably failed to file his demand for arbitration within the limitations period, we reverse the district court's order confirming the arbitration award and remand for entry of an order and judgment vacating the award.

**Reversed and remanded.**

14